IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FARMERS NEW CENTURY INSURANCE COMPANY<br>Plaintiff, | : | Case No. 4:04-CV-2608 |
| v. | : | (Judge Jones) |
| JOHN ANGERSON, C.L.A, AND J.V.,<br>Defendants. | : | |

**ORDER**

**April 18, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion to Dismiss filed by Defendant John Angerson ("Angerson") (Rec. Doc. 2), concurred with by Defendant J.V. in a separate filing (Rec. Doc. 3), against Plaintiff Farmers New Insurance Company ("Plaintiff" or "Farmers").[1] The Plaintiff has filed a timely response, and the Motion is now ripe for our review.

---

[1] Although both Motions are filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, a motion seeking dismissal of a Declaratory Judgment Act action for the absence of a case or controversy is properly brought pursuant to 12(b)(1), for lack of subject matter jurisdiction. We will therefore construe Defendants' Motions as filed pursuant to Rule 12(b)(1). See TIG Indus. Co. v. Insinger Mach. Co. Inc., 1998 WL 748287, *1 n.1. (E.D.Pa. Oct. 27, 1998).

Additionally, as J.V.'s Motion merely states that he concurs with Angerson's Motion we will construe it as a concurrence with Angerson's Motion.

For the foregoing reasons, we will deny the Defendant's Motion.

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).

**STATEMENT OF FACTS:**

According to the complaint, on April 16, 2004, the Defendant C.L.A., the son of co-Defendant Angerson, was operating an all-terrain vehicle along with co-Defendant J.V. which was involved in an accident. J.V. suffered significant injuries as a result. Not long after the accident, J.V. retained legal counsel in the person of attorney Chris Munley, who initiated conversations with the Plaintiff,

which had issued Angerson's homeowners' insurance policy, regarding whether Angerson's policy with the Plaintiff covered J.V.'s extensive injuries in the accident. It is unclear from the record before us whether Farmers ever formally declined coverage as a result of the contact made by attorney Munley.

Subsequently, Plaintiff initiated this action seeking a determination by the Court that Angerson's policy does not cover the injuries to J.V., pursuant to the Declaratory Judgment Act codified at 28 U.S.C. § 2201. Defendants now seek dismissal of this action arguing that there is not an actual case or controversy before the Court.

**DISCUSSION:**

The Declaratory Judgment Act (the "Act") provides, in relevant part, as follows:

> Creation of remedy
>
> (a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Although the Act expanded the remedies available to federal courts, it did not alter the constitutional requirements of standing. See Skelly Oil

Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)("Jurisdiction ...was not altered by the Declaratory Judgment Act."). Therefore, we must determine whether an actual case or controversy is properly before us. Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1153 (3d Cir. 1995)(citing Skelly Oil, 339 U.S. at 671) ("The existence of a 'case or controversy' is a condition precedent to the proper exercise of judicial power by a federal court and the Declaratory Judgment Act can not relax that constitutional requirement.").

The Supreme Court, in AETNA Life Ins. Co. of Hartford Conn. v. Haworth, first addressed whether an insurance company could seek declaratory relief to determine whether an insurance policy was obligated to pay benefits to an insured before the insured instituted his own action. 300 U.S. 227 (1937). The Court held that because the suit sought a final determination as to whether AETNA was required to pay benefits to the insured, that it was a justiciable case or controversy. Id. at 244.

The Third Circuit Court of Appeals more recently, in Travelers Ins. Co. v. Obusek, held that an insurer could proceed in a declaratory relief, and that there was a case or controversy, in an action seeking a declaration that the plaintiff-insurer was not required to pay for home attendant care services as a result of a

long term care policy held by the defendant. 72 F.3d 1148 (3d Cir. 1995).[2] Judge McKee explained that in cases such as this we are to apply a three-part test to determine whether an actual case or controversy exists:

> [t]o satisfy Article III's case or controversy requirement, an action must present (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution.

Id. (quoting Armstrong World Industries, Inc. v. Adams, 961 F.2d 405, 411 (3d Cir. 1992)(other internal citations omitted). As part of this determination, we are to examine the ripeness of Plaintiff's action. Id.; see also Insinger Mach. Co., Inc., 1998 WL 748287 at *3("There is a great overlap in the factors to determine the justiciability and ripeness of a declaratory action."). To determine whether an action is ripe, we look at three factors: "adversity of the interest" between the parties to the action, the "conclusiveness" of the declaratory judgment and "the practical help, or utility" of the declaratory judgment. Id. We will consider each

---

[2] In support of their Motion, Defendants cite New Hampshire Ins. Co. v. Emerson, which dismissed an action for declarative relief filed by an insurer. 1991 WL 7366 (E.D.Pa. Jan. 22, 1991). There, the court was fearful of interfering with a pending state tort action filed by the federal court defendant. Here, there is no pending state court action with which the instant action will interfere. Furthermore, to the extent that Emerson held that an insurer could not preemptively seek declaratory relief prior to the insured demanding indemnification from the insurer, we believe the case unpersuasive both because it was decided prior to Obusek and that it fails to even cite to Haworth, which, in our view, controls here.

of these factors in turn.

**A. Adversity of the Interest**

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." Id. at 1154. While a plaintiff need not demonstrate to a "mathematical certainty" that an injury will occur, plaintiffs must be able to demonstrate that the "threat of future harm .. remains 'real and immediate.'" Id. (quoting Salvation Army v. Dep't of Community Affairs, 919 F.2d 183, 192 (3d Cir.1990)(other internal citations omitted).

Here, Defendant J.V. has taken several steps, albeit short of initiating litigation, to determine whether Angerson's policy with the Plaintiff would cover J.V.'s injuries. First, his mother contacted Farmers one week after the accident, on April 23, 2004. Next, on May 19, 2004 Farmers learned that J.V. had retained counsel. On July 23, 2004, Farmers' claims adjuster Bob Phillips discussed a claim against Angerson's policy with J.V.'s attorney, a conversation that included a full accounting of J.V.'s medical expenses (approximately $90,000 to $100,000). According to Phillips' affidavit submitted along with Plaintiff's brief, he discussed with J.V.'s counsel the theories of liability under which Farmers would be liable to pay for J.V.'s injuries. (See Aff. of Bob Philips in Opp. Mot. Dismiss ¶ 4). Given these facts, it is quite reasonable for Farmers to believe that litigation instituted by

J.V. against Angerson is inevitable in the event that it denies coverage for the subject incident, and that one of the issues which would arise as a result is whether the Farmers policy is in play.

None of these allegations are denied by J.V., who merely argues that "No writ of summons, demand, or complaint has been filed by any of the Defendants named in this declaratory action." (Def. Br. Supp. Mot. Dismiss at 4). However, Plaintiff "need not wait until the harm has actually occurred to bring the action." Obusek, 72 F.3d at 1154 (quoting Armstrong World Industries, Inc., 961 F.2d at 412). Requiring the harm to actually have occurred via the filing of a writ of summons or some other formalized step would render the Act meaningless, as a party would not be able to seek relief until after litigation was commenced against it (or in this case, the potential insured).

Therefore, we are satisfied that the litigants in this action have interests sufficiently adverse to one another.

**B. Conclusiveness of the Declaratory Judgment**

Next, we must determine whether the entry of declaratory judgment would be conclusive and dispositive of the dispute between the parties. At this step, we look at whether a case or controversy exists. Id. at 1155 ("This portion of the analysis is part and parcel of the constitutionally mandated inquiry into the

existence of a case or controversy."). An integral part of this determination is whether there exists a concrete set of facts on which the court can make findings. Id. (citing Armstrong World Industries, Inc., 961 F.2d at 412).

Here, neither party disputes that the underlying events of the April 16, 2004 accident are sufficiently concrete. It is these facts, together with the policy language, that will determine whether the policy covers J.V.'s injuries.[3] The facts would be no more concrete if we dismissed this action and J.V. subsequently initiated litigation against Angerson in order to implicate the Farmers policy here in question, as the events of and surrounding the accident would remain unchanged. See Pacific Coal & Oil Co., 312 U.S. at 270 (holding that it is immaterial that frequently, in a declaratory judgment suit, the positions of the parties in the conventional suit are reversed).

Therefore, insofar as the controversy here is definite and concrete and involves the legal relations of parties who have adverse interests, as it regards questions of liability under, and the application of, Angerson's homeowners'

---

[3] We note that in TIG Ins. Co., Judge Reed dismissed an action by an insurer for a declaratory judgment. 1998 WL 748287. There, the court found that the action was not ripe because the insured had declared in an affidavit that it was not covered by the insurer. Here, even though J.V. has not initiated litigation, his counsel has repeatedly indicated to the Plaintiff an intention to seek payments from it. Thus, TIG Ins. Co., is not relevant to our determination because of J.V.'s repeated assertions through his counsel of an intention to implicate the coverages within the Farmers policy.

policy, Plaintiff's complaint meets the second Obusek factor. We now move to the final step of our analysis. See id.; Haworth, 300 U.S. at 227.

**C. Utility of the Declaratory Judgment**

Our inquiry under this prong is closely related to our inquiry in Part B, above. Declaratory relief is appropriate only when it would be useful to the parties in resolving their dispute. Obusek, 72 F.3d at 1156("It must be of some practical help to the parties."). In Obusek, the court relied on the prior requests by the insured for coverage from the insurer, in its determination that declaratory relief would be of use to the parties. Since the insured there expressed repeatedly a desire to be covered by the policy, and the insurer refused to pay, a determination of whether the insured was covered conclusively resolved the dispute. Id. In the case sub judice, we have little doubt that if we were to find for the Defendants this determination would compel Farmers to defend and indemnify its insured in a claim or action by J.V. against Angerson. Conversely, were the Plaintiff to be successful on the merits, any claim or action by J.V. against Angerson would not implicate the subject Farmers policy. Our determination would, in our view, be of measurable benefit to the parties whichever way it cuts.

**D. Conclusion**

It is evident that J.V. does not prefer litigating this aspect of his claim here,

but that mere preference is not dispositive of this matter. Congress created the Declaratory Judgment Act so that parties could "clarify legal relationships [and make] responsible decisions about the future." Id. Therefore, we find that the instant action is sufficiently ripe and presents to the Court a concrete controversy such that allowing this action to proceed on the merits will permanently alter the rights of all parties.

**NOW, THEREFORE, THE FOLLOWING ORDER IS ENTERED:**

1. Defendant John Angerson's Motion to Dismiss (Rec. Doc. 2) as concurred with by J.V. (Rec. Doc. 3) is DENIED.

s/ John E. Jones III
John E. Jones III
United States District Judge