IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FARMERS NEW CENTURY          :
INSURANCE COMPANY,           :
        Plaintiff,        :          No.  4:04-cv-2608
                                      :
        v.                :
                                        :          Judge John E. Jones III
JOHN ANGERSON, C.L.A., and J.V.,  :
        Defendants        :

## MEMORANDUM

January 22, 2008

Before the Court are cross-motions for summary judgment filed by Plaintiff

Farmers New Century Insurance Company ("Farmers") and Defendant J.V.

Defendants John Angerson and C.L.A. also filed a motion for summary judgment,

joining J.V.'s motion.  For the reasons set forth below, the Court will deny

Farmers' motion (Doc. 30) and grant the Defendants' motions. (Docs. 23, 32.)

## I.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party

bears the burden of demonstrating the absence of a genuine issue of material fact.

1

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden

by pointing to an absence of evidence supporting an essential element as to which

the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).   An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law.  *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rely merely

on allegations or denials in its own pleading; rather its response must ... set out

specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial."  *Jones*, 214 F.3d at 407.  Arguments made in briefs "are not

evidence and cannot by themselves create a factual dispute sufficient to defeat a

summary judgment motion."  *Jersey Cent. Power & Light Co. v. Twp. of Lacey*,

772 F.2d 1103, 1109-10 (3d Cir. 1985).  However, the facts and all reasonable

inferences therefrom must be viewed in the light most favorable to the non-

moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

The concurrent resolution of cross-motions for summary judgment, as are presented here, can present a formidable task.  *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (citing 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed. 1998)).  The standard of review does not change.  Each moving party must independently show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968) (stating the making of cross-motions for summary judgment "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist").  Although the standard for deciding such motions does not change, the mandate of Rule 56 that the court view all facts in the

light most favorable to the non-moving party may be difficult to apply where all parties are both moving and non-moving parties.  The circumstances of a case may require separate opinions on the respective motions.  *See Rains*, 402 F.2d at 245; *United States v. Hall*, 730 F. Supp. 646, 648 (M.D. Pa. 1990).

In this case, however, the essential facts are substantially undisputed and are wholly supported by the evidence submitted by all parties.  Whether the facts are viewed in the light most favorable to the plaintiff or the defendants, the same story unfolds.  The present cross-motions for summary judgment will therefore both be decided by this memorandum and order.  *See Interbusiness Bank*, 318 F. Supp. 2d at 236 (citing Fed. R. Civ. P. 1 for proposition that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

## B.    Applicable Law

Where a federal district court's jurisdiction is based on diversity of citizenship, as it is here, a court determines which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits, in this case, Pennsylvania.  *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219 (3d Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).  There is some disagreement among Pennsylvania decisions and federal

4

decisions applying Pennsylvania law as to which choice of law rule governs a

contract dispute. *Budtel Assoc., LP v. Continental Cas. Co.*, 915 A.2d 640, 643-44

(Pa. Super. Ct. 2006) (collecting cases). In this case, however, the parties have

relied exclusively on Pennsylvania law and seem to agree that Pennsylvania law

governs the insurance contract at issue. Accordingly, to the extent that the law of a

state other than Pennsylvania could control the resolution of these motions, the

issue has been waived. *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619

F.2d 1001, 1005 n. 1 (3d Cir. 1980). Pennsylvania law shall apply.

In applying Pennsylvania law and in the absence of controlling authority

from the Supreme Court of Pennsylvania, this Court must predict how the Supreme

Court of Pennsylvania would resolve the questions posed in this case. *Colliers

Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006).

Though not controlling, decisions from Pennsylvania's lower appellate courts are

considered predictive, and in the absence of an indication otherwise, shall be

accorded significant weight. *Id.*

## II.   BACKGROUND

The question presented by this declaratory judgment action is whether

Farmers homeowners insurance policy issued to Angerson covers injuries

sustained by J.V., arising out of an all-terrain vehicle ("ATV") accident.

On April 16, 2004, J.V., a minor, was a passenger on an ATV driven by Angerson's son, C.L.A., also a minor.  (Pl.'s Statement of Undisputed Material Facts ["SMF"], Doc. 30-5, ¶¶ 3, 6, 8; Def's SMF, Doc. 27, ¶ 1.)  C.L.A. started out from the residence where he and Angerson reside.  (Pl.'s SMF ¶ 10.)  C.L.A. drove the ATV approximately half a mile onto land not owned by Angerson.  (Pl.'s SMF ¶¶ 26-28.)  As C.L.A. was operating the ATV on a wooded path near a dirt road known as Elias Road, the ATV tipped over, resulting in serious bodily injuries to J.V.  (Pl.'s SMF ¶ 4; Def.'s SMF ¶¶ 1-2.)

The Angerson residence is located on Bowen Road, a paved road, however the road does not reach the Angerson property directly, and an access road is used to get from the Angerson residence to Bowen Road.  (Def.'s SMF ¶ 9.)  Approximately one-third of a mile past the Angerson residence, Bowen Road becomes a dirt road and is then known as Elias Road.  (Def.'s SMF ¶ 9; Karsnak Report, Doc. 22, Ex. A.)

There are numerous ATV paths in the area around the Angerson home.  (Pl.'s SMF ¶ 32; Def.'s SMF ¶ 9.)  C.L.A. had ridden the ATV on some of these paths to the accident site before, and used the ATV on these paths about once a week.  (Def.'s SMF ¶ 9.)  Neither Angerson nor C.L.A. is sure which of the paths C.L.A. took on the day of the accident.  (Pl.'s SMF ¶ 29; Def.'s SMF ¶¶ 8, 10.)

However, C.L.A. took one of the paths he "always" takes "every time" he rides in that area.  (Def.'s SMF ¶ 9; C.L.A. Dep. at 8, 14.)  No path to the accident site originates on Angerson's property, and to get to the accident site C.L.A. would have had to cross Bowen Road or use the access road.  (Pl.'s SMF ¶¶ 32-33; Def.'s SMF ¶ 10.)

Prior to the accident, Angerson and C.L.A. frequently used the ATV on their property to move rocks that accumulated because of flooding.  (Pl.'s SMF ¶¶ 20-21.)  Angerson also used the ATV himself about 10-15 times a month for recreation on different paths in the woods outside of his property.  (Angerson Dep. at 12, 15, 18, 19.)  However, Angerson had never ridden the ATV to the exact location of the accident.  (Pl.'s SMF ¶ 30.)  In addition, four to five times a year in 2001 and 2002, Angerson used the ATV outside of his property to gather large stones which his wife used to create rock gardens around their property.  (Pl.'s SMF ¶¶ 13-16; Def.'s SMF ¶ 12.)  On these occasions, Angerson would pick rocks within 100-150 yards of the accident site.  (Pl.'s SMF ¶ 13; Def.'s SMF ¶ 12.)[1]

---

[1] Farmers argues that Angerson and C.L.A. submitted "sham" answers to interrogatories which state that, prior to the accident, they "frequently/weekly" made recreational use of the property where the accident occurred and rode the ATV on the (unidentified) accident path 10-15 times a month.  These responses are consistent with C.L.A.'s deposition testimony that he rode on the paths around the Angerson residence about once a week (C.L.A. Dep. at 8-9) and Angerson's deposition testimony that he and C.L.A. used the ATV 10-15 times a month on such paths (Angerson Dep. at 12, 18).  There is no genuine dispute regarding these facts.

## III.   DISCUSSION

Farmers seeks a declaration that it has no duty to defend or indemnify Angerson or C.L.A. as a result of the April 16, 2004 ATV accident under the homeowners policy it issued to Angerson.  The interpretation of an insurance policy is a question of law for the court.  *Kvaerner*, 908 A.2d at 897.  The court's primary goal in interpreting a policy is to ascertain the parties' intentions as manifested by the policy's terms.  *Id.*   When the language of the policy is clear and unambiguous, the court must give effect to that language.  *Id.*  When a provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."  *Id.*  "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006).

The insured has the initial burden of establishing coverage under an insurance policy.  *Butterfeld v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. Ct. 1995).  If coverage is established, the insurer then bears the burden of proving an exclusion applies to deny coverage.  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)  If the insurer establishes that an exclusion

precludes coverage, the insured bears the burden of proving that an exception to

that exclusion applies.  *See N. Ins. Co. of N.Y. v. Aardvark Assoc., Inc.*, 942 F.2d

189, 194-95 (3d Cir. 1991) (predicting Pennsylvania Supreme Court would adopt

reasoning of *Lower Paxon Twp. v. U.S. Fid. & Guar. Co.*, 557 A.2d 393 (Pa.

Super. Ct. 1989)).

### A.    Coverage

Farmers issued a Homeowners 3 Special Form insurance policy, number

92251-70-82, to John Angerson with a policy period of February 2, 2004 to

November 28, 2004.  (Compl. Ex. A, Doc. 1-3, at 2.)[2]  John Angerson is the named

insured.  (*Id.*)  An insured is also defined as including "your relatives" and "other

persons under the age of 21 and in the care of any person named above."  (*Id.* at 4.)

"You" and "your" refer to the named insured and his spouse.  (*Id.*)  Angerson's

minor son C.L.A. is therefore also an insured.

The policy provides $300,000 per occurrence in personal liability coverage.

(*Id.* at 2.)  Section II, Coverage E - Personal Liability provides that "[i]f a claim is

made or a suit is brought against an 'insured' for damages because of 'bodily

injury' ... caused by an 'occurrence' to which this coverage applies, [Farmers] will:

---

[2] The policy issued by Farmers, like most insurance policies, is not consecutively paginated.  Citations to policy pages are to the CM/ECF page numbers of Document 1-3.

(1) pay up to [its] limit of liability for the damages which the 'insured' is legally liability ... and (2) provide a defense at [its] expense by counsel of [its] choice, even if the suit is groundless, false or fraudulent."  (*Id.* at 17.)

The parties do not dispute that the April 16, 2004 accident meets the policy's definition of "occurrence" or that, as a result of the accident, J.V. suffered "bodily injury" for which Angerson and/or C.L.A. may be legally liable in damages.  The accident therefore falls within Coverage E.

**B.     Exclusion**

Farmers relies on an exclusion to deny coverage.  The policy provides that Coverage E does not apply to bodily injury arising out of:

> (1)     The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an 'insured';
>
> (2)     The entrustment by an 'insured' of a motor vehicle or any other motorized land conveyance to any person; or
>
> (3)     Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

(*Id.* at 18.)

Farmers argues that Angerson's ATV is a "motor vehicle" or "motorized land conveyance" and therefore, this motor vehicle exclusion precludes coverage. Defendants argue that the terms of the exclusion are ambiguous and should be interpreted in favor of coverage.

Regardless of whether it is a "motor vehicle" (an issue discussed in detail below), the ATV falls within the broader term "motorized land conveyances" and therefore triggers the exclusion.  This term is undefined by the policy, but is unambiguous in the context of the exclusion.  "[C]ommon sense suggests it means any motorized vehicle intended for land use except those designated for travel on public roads or those subject to motor vehicle registration, which are defined as motor vehicles...."  *Nationwide Mut. Ins. Co. v. Gardner*, 79 Pa. D. & C. 4th 150, 158-59 (C.C.P. Huntingdon County 2006).  The clear purpose of this term is to bring within the exclusion a broader category of motorized land vehicles that do not fall within the definition of motor vehicles.  The Court must interpret the policy to give effect to this intent.  *See Kvaerner*, 908 A.2d at 897. ("Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms.").  Because the ATV at issue is an "other motorized land conveyance", the motor vehicle exclusion precludes coverage for the April 16, 2004 accident.  However, this analysis does not end our

11

inquiry, and we will next examine an exception to this exclusion.

### C.      Exception to the Exclusion

The Defendants rely on an exception to the motor vehicle exclusion to bring the April 16, 2004 accident within Coverage E.  The policy provides that the motor vehicle exclusion does not apply to:  "A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and ... owned by an insured and on an insured location."  (Compl. Ex. A at 18.)  Thus, to meet their burden of proving that this exception applies, the Defendants must show that the ATV (1) is a motorized land conveyance, (2) designed for recreational use off public roads, (3) not subject to motor vehicle registration, (4) owned by an insured, and (5) on an insured location."

As discussed above, the ATV is clearly a motorized land conveyance.  The undisputed facts of this case establish that the ATV was designed for recreational use off public roads (Pl.'s SMF ¶ 12; Angerson Dep. at 9-11) and owned by the named insured, Angerson (Pl.'s SMF ¶ 4).  The parties disagree as to whether the ATV was subject to motor vehicle registration and was on an insured location.

### 1.      Whether the ATV Was Subject to Motor Vehicle Registration

The Pennsylvania Snowmobile All-Terrain Vehicle Law ("SATVL"), Pa. C.S.A. §§ 7701 *et seq.,* a separate chapter within the Vehicle Code applicable only

to snowmobiles and ATVs, provides that it is unlawful for a person to operate or for an owner to permit another person to operate an ATV unless the ATV is registered with the Department of Conservation and Natural Resources ("DCNR"). 75 Pa. C.S.A. § 7711.1. On its face, the SATVL thus requires Angerson's ATV to be registered.

The Defendants contend that an exception to this registration requirement applies. The SATVL provides that an ATV is exempt from registration if it "is operated on land owned or leased by the owner or operator of the ... ATV and it is not operated elsewhere within this Commonwealth." 75 Pa. C.S.A. § 7711.1(f)(3). The Defendants argue that Angerson's ATV was used on Angerson's property, or only a short distance away, and therefore, is exempt from registration. Farmers counters that the very accident at issue occurred on land not owned or leased by Angerson, proving that the ATV was operated elsewhere in the Commonwealth. The Court need not decide whether Angerson's and C.L.A.'s use of the ATV outside their property subjected the ATV to registration under § 7711.1 because, even if the exemption relied on by the Defendants applied, the ATV was still subject to registration under § 7711.2. That provision makes it unlawful for a person to operate or for an owner to permit another person to operate an ATV identified in the § 7711.1(f)(3) exemption unless a "limited registration" has been

issued for the ATV by DCNR.  75 Pa. C.S.A. § 7711.2; *see also* Pa. Dep't of

Conservation & Natural Resources, "ATV Registration, Titling and Insurance",

available at http://www.dcnr.state.pa.us/forestry/atv/registration.aspx.  Whether

under § 7711.1 or § 7711.2, the ATV was required to be registered with DCNR.

The inquiry does not end here, however.  The exception relied on by the

Defendants provides that the motor vehicle exclusion does not apply if the ATV

was "not subject to *motor vehicle* registration."  Thus, under the plain language of

the policy, for the motor vehicle exclusion to apply, the vehicle at issue must be

subject to motor vehicle registration, not simply any registration.  The question in

this case, therefore, becomes whether the statutory requirement of registration with

DCNR subjected the ATV to "motor vehicle" registration.

In deciding this question, the Court will first consider whether an ATV is a

"motor vehicle" and subject to registration as such.  The term "motor vehicle" is

not defined in the policy.  The Pennsylvania Vehicle Code defines the term "motor

vehicle" as "a vehicle which is self-propelled except an electric personal assistive

mobility device or a vehicle which is propelled solely by human power or by

electric power obtained from overhead trolley wires, but not operated upon rails."

75 Pa. C.S.A. § 102.  Under this definition, Pennsylvania courts have found an

ATV to be a motor vehicle for the purposes of licensing, registration, and financial

14

responsibility requirements.  *Commonwealth v. Eliason*, 509 A.2d 1296, 1298-99

(Pa. Super. Ct. 1986); *In re Wylie*, 4 Pa. D. & C. 4th 664, 665 (C.C.P. Butler

County 1990); *PennDOT v. Eller*, 2 Pa. D. & C. 4th 161, 163-64 (C.C.P. Erie

County 1989); *Commonwealth v. Predmore*, 37 Pa. D. & C. 3d 559, 560-61

(C.C.P. Potter County 1985).  All of these cases, however, were decided before the

enactment of the SATVL provisions specifically addressing the licensing,

registration, and financial responsibility requirements of ATVs.  *See* 2001, June 25,

P.L. 701, No. 68.

Under the current statutory scheme, there are significant differences between

an ATV and a "motor vehicle" and their respective registrations.  The Vehicle

Code defines the term "vehicle" as "every device in, upon or by which any person

or property is or may be transported or drawn upon a *highway*."  75 Pa. C.S.A. §

102 (emphasis added).  The SATVL specifically defines an ATV as an "off-

highway vehicle", 75 Pa. C.S.A. § 7702, and prohibits operation of an ATV on a

street or highway, 75 Pa. C.S.A. § 7721.  The SATVL also excludes from the

definition of ATV any vehicle that is required to be registered as a motor vehicle

under the Vehicle Code.  75 Pa. C.S.A. § 7702

The purpose of registering "motor vehicles" with PennDOT under the

Vehicle Code is to ensure that such vehicles may be safely driven on a highway.

15

75 Pa. C.S.A. § 1301(a).  A motor vehicle may not be driven on a highway without a drivers' license.  75 Pa. C.S.A. § 1501.  Registration ensures that motor vehicles are roadworthy by requiring them to pass a safety inspection.  75 Pa. C.S.A. § 4703.  Registration also subjects motor vehicles to the minimum insurance requirements of the MVFRL, 75 Pa. C.S.A. §§ 1702, 1786, the purposes of which are to compensate victims of highway accidents and to lower automobile insurance rates by reducing the number of uninsured motorists on Pennsylvania highways, *Pa. Nat'l Mut. Cas. Co. v. Black*, 916 A.2d 569, 580 (Pa. 2007).

Few of these procedures and purposes are applicable to registration of ATVs under the SATVL.  Registration of an ATV with DCNR, in fact, precludes the ATV from being operated on a highway.  75 Pa. C.S.A. § 7721.  No license is required to operate an ATV, and an ATV may be operated by individuals as young as eight years old.  75 Pa. C.S.A. § 7725.  An ATV is not subject to a safety inspection.  Insurance is required only if the ATV is operated off the owner's property, and even then no minimum amount of insurance is required.  75 Pa. C.S.A. § 7730.

Motor vehicle registration under the Vehicle Code and ATV registration under the SATVL entail different procedures and serve different purposes.  These distinctions lead to the conclusion that the requirement that an ATV be registered

16

under the SATVL does not subject the ATV to motor vehicle registration for the purposes of the exception contained in the Farmers policy.

Although no Pennsylvania court has squarely addressed the meaning of the term "not subject to motor vehicle registration" in an exception to a policy exclusion such as the one at issue here, several decisions illustrate the important differences between ATV registration under the SATVL and motor vehicle registration under the Vehicle Code.

In *Gardner*, *supra*, – a case relied on heavily by Farmers – the Nationwide homeowners policy at issue, likes the Farmers policy here, excluded liability coverage arising out of motor vehicles. Unlike the Farmers policy, however, the Nationwide policy defined motor vehicle to mean, in part, "a motorized land vehicle or conveyance ... designed for travel on public roads or subject to motor vehicle registration." *Gardner*, 79 Pa. D. & C. 4th at 156. There, the court held it could "find no fault" with the insureds' argument that registration of ATVs under the SATVL, rather under the Vehicle Code, removed ATVs from the definition of motor vehicles for the purposes of the exclusion. *Id.* at 156-57.

Also instructive is the holding in *Pelter v. PennDOT*, 663 A.2d 844 (Pa. Commw. Ct. 1995). There, Pelter attempted to cross a road on his ATV when he was struck by a car. PennDOT imposed a three-month suspension of Pelter's

driver's license for operating a motor vehicle without the financial responsibility required by the MVFRL.  In ruling on Pelter's challenge to the suspension, the court held that Pelter was required to register the ATV with the Department of Environmental Resources, but that this registration did not confer upon Pelter authority to operate the ATV on a highway.[3]  *Id.* at 848.  Because the ATV could not go on the highway, it was not subject to registration under the Vehicle Code, and because only vehicles subject to such registration need to meet the financial responsibility requirements of the MVFRL, Pelter's suspension was reversed.  *Id.*

The importance of the distinction between registration under the SATVL and registration under the Vehicle Code is also demonstrated by the Superior Court's recent opinion in *Nationwide Mut. Ins. Co. v. Yungwirth*, --- A.2d ---, 2008 WL 90086 at *2-4 (Pa. Super. Ct. Jan. 4, 2008).  The MVFRL requires that automobile insurers offer uninsured motorist ("UM") coverage which must "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles."  75 Pa. C.S.A. § 1731(a), (b).  In *Yungwirth*, the trial court held that an automobile policy exclusion which excluded

---

[3] The similar provisions of the SATVL at issue in *Pelter* were repealed in 2001 and replaced with the current registration requirements.  *See* 2001, June 25, P.L. 701, No. 68, § 8.

18

UM coverage for ATVs violated the MVFRL's requirement that UM coverage provide protection for injury arising from "motor vehicles."  On appeal, the insurer argued that an ATV is a not a "motor vehicle" for purposes of the MVFRL's UM coverage requirement.  The Superior Court agreed and reversed.  Although acknowledging that an ATV arguably fits within the broad definition of "motor vehicle" contained in the Vehicle Code, the court held as a matter of statutory construction that the enactment of the SATVL, which specifically and narrowly addressed ATVs, supercedes the general definition of the Vehicle Code. *Yungwirth*, 2008 WL 90086 at *3-4.  Finding that, by enacting the SATVL, "the legislature chose to specifically define an ATV as a motorized off-highway vehicle that is recreational in nature and not intended for highway use," the court held that excluding ATVs from UM coverage was consistent with the MVFRL's purpose of reducing the cost of automobile insurance and the number of uninsured motorists on public highways.  *Id.*

These decisions do not directly answer the question before the Court, but they do demonstrate that Pennsylvania courts recognize important distinctions between registration of ATVs under the SATVL and registration of motor vehicles under the Vehicle Code.  These cases support the conclusion that, under Pennsylvania law, an ATV is "not subject to motor vehicle registration."

The courts of other jurisdictions with similar statutory schemes for the registration of motor vehicles and ATVs, interpreting nearly identical policy provisions, have also concluded that requiring registration of ATVs with an environmental or revenue agency for limited purposes does not subject an ATV to "motor vehicle" registration.  *See, e.g.*, *Am. Family Mut. Ins. Co. v. Peck*, 169 S.W.3d 563, 567-69 (Mo. Ct. App. 2005) (relying in part on *Pelter*); *Concord Gen. Mut. Ins. Co. v. Woods*, 824 A.2d 572, 575-78 (Vt. 2003); *MacLean v. Hingham Mut. Fire Ins. Co.*, 750 N.E.2d 494, 496-98 (Mass. Ct. App. 2001); *and cf. Safeco Ins. Co. of Am. v. Clifford*, 896 F. Supp. 1032, 1037 (D. Ore. 1995) (finding ATV subject to motor vehicle registration because Oregon statute stated that registration of ATVs was to be "administered in the same manner and have the same effect as registration" of other motor vehicles).  Although these decisions are not controlling, their reasoning is persuasive.

Based on the important distinctions between the Vehicle Code and the SATVL, the Pennsylvania decisions described above, and the analogous cases from jurisdictions with similar statutory schemes, the Court predicts that the Pennsylvania Supreme Court would conclude that the requirement that an ATV be registered under the SATVL does not subject the ATV to motor vehicle registration within the meaning of the policy exclusion at issue.

This conclusion gives full effect to all the terms of the exception.  To hold that the exception is inapplicable because a vehicle is subject to any type of registration would read "motor vehicle" out of the term "not subject to motor vehicle registration."  Such a reading contravenes basic principles of insurance contract interpretation.  *Mut. of Omaha Ins. Co. v. Bosses*, 237 A.2d 218, 220 (Pa. 1968) ("[T]he cardinal principle of interpretation is that an insurance policy must be construed in such a manner as to give effect to all of its provisions.  Nor may it be construed in such a way as to render any part of it useless and unnecessary.").

This conclusion is further supported by a common sense interpretation of the policy terms.  *Kvaerner*, 908 A.2d at 897 ("Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense.").  In determining the meaning of the term "not subject to motor vehicle registration", the Court must consider the intent of the term in the context of the entire policy.  *401 Fourth Street, Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005) ("[W]e will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.").  The purpose of the motor vehicle exclusion in a homeowners policy is to exclude coverage that is provided by an automobile insurance policy.  The homeowner who operates a motor vehicle on the highways is expected to procure

21

coverage for the vehicle under an auto policy in at least the amount required by statute.  The exception to the exclusion, however, brings back within the coverage provided by a homeowners policy those vehicles that are generally operated in or around the homeowner's property, rather than on the highways, and which are typically not covered by an automobile policy.

The ATV at issue here fits comfortably within this second category of vehicles.  Interpreting the term "not subject to motor vehicle registration" to provide coverage for the ATV is consistent with the intent of the parties as expressed in the policy terms and fulfills the reasonable exceptions of an insured, reading the policy as a whole.  *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978) ("The reasonable expectation of the insured is the focal point of the insurance transaction involved here.  Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled."); *Brink v. Erie Ins. Group*, --- A.2d ---, 2008 WL 54322 at *7 (Pa. Super. Ct. Jan. 4, 2008) ("This Court has often stated that [t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.  In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved.").  The Court finds that Angerson's ATV was "not subject to motor vehicle registration", and therefore

falls within the exception to the motor vehicle exclusion. Once again however, this determination does not bring our analysis of the myriad issues present in this case to a close, and we will now proceed to examine the second requirement for application of this exception.

**2.      Whether the ATV Was on an Insured Location**

For the exception relied on by the Defendants to apply, they must also show that the ATV was "on an insured location."[4]  The Farmers policy states in relevant part:

4.      "Insured location" means:

a.      The 'residence premises";

b.      The part of other premises, other structures and grounds used by you as a residence and:

(1)      Which is shown in the Declarations; or

(2)      Which is acquired by you during the policy period for your

---

[4] The policy exhibits some confusion as to when the "motorized land conveyance" must be "on an insured location" for the exception to apply.  Always and exclusively?  The majority of the time?  Once?  In the context of the exclusion and exception, however, this phrase can be reasonably interpreted as requiring the vehicle to be on an insured location at the time of the occurrence for which the insured seeks coverage.  The parties have addressed the issue in this manner, and the Court will similarly adopt this interpretation.

Pennsylvania courts and federal courts applying Pennsylvania law have also held that it is the physical location of the accident that is relevant to determining coverage under the at-issue exclusion and exception, not the location of the alleged negligence under a theory of liability such as negligent entrustment.  *Federal Kemper Ins. Co. v. Derr*, 563 A.2d 118, 123 (1989); *Gardner*, 79 Pa. D. & C. 4th at 164-65; *Allstate Ins. Co. v. Drumheller*, 285 F. Supp. 2d 605, 611 n.2 (E.D. Pa. 2003), *vacated on other grounds*, 115 Fed. Appx. 528, 529 (3d Cir. 2004).

use as a residence; [and]

c.    Any premises used by you in connection with a premises in 4.a
      and 4.b above.

(Compl. Ex. A at 4.)  "Residence premises" is in turn defined as "the one family

dwelling other structures and grounds or that part of any other building where you

reside and which is shown as the 'residence premises' in the Declarations.  (*Id.* at

5.)  In this case the residence premises consist of the home, shed, and acre-and-a-

half of land owned by Angerson.  (Pl.'s SMF ¶ 11.)  It is undisputed that the

accident at issue occurred away from Angerson's property.  (Pl.'s SMF ¶¶ 26-28.)

The question thus becomes whether the location of the accident is a premise "used

... in connection with" Angerson's property.

The parties correctly identify *State Farm Fire and Casualty Co. v.

MacDonald*, 850 A.2d 707 (Pa. Super. Ct. 2004), as the leading Pennsylvania case

on the interpretation of this exception.  The Third Circuit has also identified

*MacDonald* as controlling precedent on this issue.  *See Allstate Ins. Co. v.

Drumheller*, 115 Fed. Appx. 528, 529 (3d Cir. 2004) (vacating district court

decision regarding whether ATV accident occurred on insured location decided

before *MacDonald* and remanding for reconsideration in light of *MacDonald*).

In *MacDonald*, the State Farm homeowners policy at issue excluded

coverage for bodily injury arising out of ownership of a motor vehicle.  The policy

24

defined "motor vehicle" as including "a motorized ... all-terrain vehicle ... owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location." 850 A.2d at 709-10. The State Farm policy, like the Farmers policy here, defined "insured location" to include "any premises used by you in connection with" the residence premises. *Id.* at 710. The insured, MacDonald, kept ATVs which he rode "frequently, traversing his property as well as an adjacent field." *Id.* at 708. MacDonald also allowed his friends' teenage daughter and her friends to ride ATVs on his property and the adjacent field. *Id.* On one occasion, two friends of the daughter, while riding in the adjacent field, collided with some trees, resulting in the death of one of the friends. *Id.*

Based on these facts, the *MacDonald* court held that the accident was covered by the State Farm policy. *Id.* at 711. In interpreting the meaning of "insured location", the court relied on dictionary definitions of "use", meaning "continued or repeated exercise or employment", and "connection", meaning "the act of connecting: a coming into or being put in contact." *Id.* The court held that MacDonald "used" the adjacent field "in connection with" his residence premises based on the "ample evidence that MacDonald repeatedly rode his ATV from his property onto the adjacent field." *Id.*

The *MacDonald* court rejected the insurer's argument, based on *Uguccioni*

*v. United States Fidelity and Guaranty Co.*, 597 A.2d 149 (Pa. Super. Ct. 1991),

that premises "in connection with" residence premises are limited to those

situations where the non-residence premises are used out of necessity.

*MacDonald*, 850 A.2d at 710-11.  The court held that *Uguccioni*'s holding, that the

definition of insured location is broad enough to encompass a road in a private

development used to access the residence premises, did not exclude from the term

"insured location" premises used to by the insured for recreational purposes.  *Id.*

        As support for its holding, the *MacDonald* court relied on *Nationwide*

*Mutual Insurance Co. v. Prevatte*, 432 S.E.2d 90 (N.C. App. Ct. 1992), where the

court held that an accident which occurred at the end of an ATV trail that began on

the insured's residence premises and ended on a neighbor's property was an

insured location covered by a homeowners policy.  *Id.* at 711-12.  The *MacDonald*

court found persuasive the *Prevatte* court's reasoning that

> that plaintiff-insurer, who drafted the policy, had the
> opportunity to restrict the definition of insured location to
> include only those locations in which the insureds had a
> legal interest, by expressly providing so in the policy.
> Plaintiff-insurer failed to include such a provision.  Absent
> such a clause of restriction, coverage should not be denied
> under the facts of this case.

*MacDonald*, 850 A.2d at 711-12 (quoting *Prevatte*, 423 S.E.2d at 92.)

        *MacDonald* was analyzed by the Third Circuit in the unpublished decision

26

*Allstate Insurance Co. v. Drumheller*, 185 Fed. Appx. 152 (3d Cir. 2006).  In that case, the Allstate policy at issue excluded coverage for bodily injury arising out use or ownership of motor vehicles but provided that the exclusion did not apply to "any motor vehicle designed principally for recreational use off public roads, unless the vehicle is being used by an insured person and is being use away from an insured premises."  *Id.* at 153.  The policy defined insured premises to include "any premises used by an insured person in connection with the residence premises."  *Id.*  The accident at issue in that case occurred when the ATV struck a manhole cover on a trail over a sewer easement, not on the insured's property.  The trail began about 800 yards from the end of the insured's driveway and was accessed by driving down the driveway, crossing a bridge, and turning right.  *Id.* at 157; *see also* 285 F. Supp. 2d 605, 608 (E.D. Pa. 2003).[5]  Prior to the accident, the insured, Drumheller, "frequently traveled the trail" to a construction site and creek where he would ride his ATV.  285 F. Supp. 2d at 608.

The Third Circuit affirmed the district court's holding that the accident was covered by the policy.  Allstate argued that the case was distinguishable from *MacDonald* because the field where the accident occurred in that case was

---

[5] Because the Third Circuit in its unpublished decision was writing primarily for the parties who were familiar with the dispute, the opinion does not set forth the facts in detail, *see* 185 Fed. Appx. at 153, and therefore, the district court's initial opinion in *Drumheller* is relied on, in part, for some factual background.

contiguous with the insured's property whereas the trail at issue did not touch
Drumheller's property.  The Third Circuit rejected this argument, holding that the
*MacDonald* court's use of the term "adjacent" to describe the field in that case did
not limit premises "used in connection with" residence premises to property
touching or sharing a common border with the insured's property.  185 Fed. Appx.
at 157-58.  In rejecting this argument, the court relied on dictionary definitions of
"adjacent" as meaning "not distant or far off", "relatively near", and "lying near or
close to: sometimes contiguous."  *Id.* at 158.  More importantly, however, the court
held that the physical relationship of the insured's residence premises and the
property used in connection therewith is not the "crucial inquiry" under
*MacDonald*.  *Id.*  Rather, the focus in *MacDonald* was the insured's "*repeated use
of the ATV on his property and on the adjacent field*."  *Id.*  The Third Circuit
predicted that "the Pennsylvania Supreme Court would follow *MacDonald*'s
holding that 'in connection with' means the repeated use of the ATV emanating
from and returning to the insured's residence."  *Id.*  The court held that
"Drumheller's regular recreational use of the property in question was 'in
connection with' his residence."  *Id.* at 159-60.  Like *MacDonald* court, the Third
Circuit emphasized that if an insurer intended to restrict coverage to property that
actually touched the insured premises or property in which the insured had a legal

interest, it could have included such a limitation in the policy.  *Id.* at 158 & n.6.

The Defendants, naturally, compare this case to the facts of *MacDonald* and *Drumheller* in arguing that those decisions control the outcome here.  Farmers, of course, attempts to distinguish these decisions and argues that this case is more analogous to *Gardner*, *supra*.  In that case, a Nationwide homeowners policy excluded coverage for bodily injury arising out of ownership or use of "a motor vehicle or all other motorized land conveyance."  *Gardner*, 79 Pa. D. & C. 4th at 153.  The court found an ATV to be a "motorized land conveyance" triggering the exclusion.  An exception stated that the exclusion did not apply to "a vehicle owned by an insured and designed for recreational [use] off public roads while on an insured location", and "insured location" was defined to include "a premise you use with" the residence premises.  *Id.* at 159-60.  The accident in *Gardner* occurred while the insured's 13-year-old son was operating an ATV with a 12-year-old passenger on a township road.  *Id.* at 151-52.  The ATV encountered a tractor-trailer approaching in the opposite direction, and an accident ensued, causing fatal injuries to the passenger.  *Id.*

The *Gardner* court held that the exception to the motor vehicle exclusion was inapplicable.  The insured in that case argued that the road was an insured location, relying on the holding in *Uguccioni*, 597 A.2d at 150, that the definition

29

of insured location is broad enough to include roads in a private development used to access the insured residence.  The *Gardner* rejected this argument and distinguished *Uguccioni* based on the fact that the accident at issue occurred on a public road leading to a private road that led to the residence.  *Gardner*, 79 Pa. D. & C. 4th at 163.  The insured also relied on *MacDonald* in arguing that the township road was used in connection with his residence, but the court also rejected this argument, finding that "[i]n this case, we have no evidence of repeated use of the ATV on the township road where the accident occurred."  *Gardner*, 79 Pa. D. & C. 4th at 164.

The Court finds that the facts of this case are most analogous to *MacDonald* and *Drumheller*.  The accident at issue occurred on a wooded trail about 2538 feet from Angerson's home.  In *Drumheller* the trail on which the accident occurred began about 2400 feet from the insured's property.  Farmers argues that the property on which the accident occurred does not adjoin Angerson's land, but the *Drumheller* court held that *MacDonald*'s use of the term "adjacent" did not limit the definition of insured location to property contiguous to the insured's.  Multiple times during his deposition, Angerson, in fact, described the accident location as being "adjacent" to his property.  (*See* Angerson Dep. at 10 (stating the accident occurred "three-tenths of a mile from my house, adjacent to my land") and

Angerson Dep. at 25 (stating C.L.A. was permitted to operate the ATV outside of Angerson's property on "certain paths that are off the road.  Different properties that are adjacent to our property, there's paths").)  As in *MacDonald* and *Drumheller*, the accident location in this case was "not distant" from and was "relatively near" to the insured's property, and therefore, fits within the *MacDonald* framework.  *Drumheller*, 185 Fed. Appx. at 158.

On the other hand, *Gardner* is distinguishable because the accident there occurred on a public road, while the accident here occurred off the road.  Although C.L.A. may have crossed Bowen Road to access a trail, the accident occurred on a wooded path off the road.  (Angerson Dep. at 68-69.)  This distinction is significant because in *Gardner* the court concluded the definition of insured location was not board enough to encompass public roads, in part, because "the legislature has ordained it unlawful to operate an ATV on public roads not designated and posted as an ATV road."  *Gardner*, 79 Pa. D. & C. 4th at 163.  While operation of an ATV *on* a public road is prohibited by statute, the SATVL specifically allows an ATV to *cross* a public road.  75 Pa. C.S.A. § 7721(c).

As to the "crucial inquiry"  – the insured's "repeated use of the ATV on his property and on the adjacent [property]", *Drumheller*, 185 Fed. Appx. at 158 – the facts of this case are also most analogous to *MacDonald* and *Drumheller*.  Farmers

argues that the accident cannot have occurred on an insured location because Angerson admits that he never rode the ATV to the exact accident site.[6]  This argument unfairly narrows the inquiry called for by *MacDonald*.  The question in *MacDonald* was not whether the insured had been to the exact spot in the adjacent field where the accident occurred, but whether he had used the field.  Similarly, the inquiry in *Drumheller* was not whether the insured had previously ridden over the particular manhole cover that caused the accident, but whether he had ridden generally on the trail where the manhole was located.

In this case, Angerson and C.L.A. made frequent use of the area in which the accident occurred.  About 10-15 times per month, Angerson rode the ATV from his property onto the paths through the woods adjacent to his land.  About once a week, C.L.A. also rode the ATV on these adjacent paths, and he had previously ridden to the location of the accident.  In addition, up until about two years before the accident, Angerson used the ATV to collect stones for rock gardens on his property from a location 100-150 yards from the accident site.  These facts

---

[6] Farmers also relies on the following exchange from Angerson's deposition as an "admission" that the accident location was not used in connection with his property.  Referring to hand-drawn maps of the area around Angerson's home, Farmers' counsel asked, "Have you ever used any of the area down here where you indicated the accident was in connection with your home or where you got the rocks?"  Angerson relied, "No."  (Angerson Dep. at 45.)  However, this answer needs to be placed in context. As Angerson had already explained, the place "where [he] got the rocks" was not the exact site of the accident, but was 100-150 yards away.  (Angerson Dep. at 21.)

demonstrate that Angerson and C.L.A. repeatedly rode the ATV from their property into the adjacent woods and back for recreational and home-improvement purposes. Therefore, the area where the accident occurred was used in connection with the residence premises within the meaning of the term "insured location" contained in the Farmers policy. *MacDonald*, 850 A.2d at 711.

Farmers further argues that only Angerson's use of the adjacent woods may be considered because the word "you" in the phrase "used by you in connection with [the residence premises]" refers to "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." (Compl. Ex. A. at 4.) In *MacDonald*, the court considered the testimony of the daughter of the insured's friends regarding use of the adjacent field. 850 A.2d at 711. Similarly, in *Prevatte*, the case relied on by the *MacDonald* court, the property where the accident occurred was found to be used to "you" in connection with the insured's premises because the insured's children regularly rode ATVs there. 423 S.E.2d at 92. Further, Angerson could be considered to "use" the adjacent woods "in connection with" his home by permitting a minor member of the household to ride his ATV there. (*See* Angerson Dep. at 12, 25.) Regardless, however, Angerson's activities alone are enough to establish the repeated use of the area where the accident occurred.

33

## IV.   CONCLUSION

The April 16, 2004 accident comes with in the coverage of Angerson's Farmers homeowners policy, but this occurrence also triggers the motor vehicle exclusion to that coverage.  Farmers remains obligated to defend and indemnify Angerson and C.L.A. from claims arising out the accident, however, because this occurrence falls within the exception to the motor vehicle exclusion for motorized land conveyances, designed for recreational use off public roads, not subject to motor vehicle registration, owned by an insured, and on an insured location. Therefore, and for the foregoing reasons, Farmers' motion for summary judgment will be denied, and the Defendants' motions for summary judgment will be granted.  An appropriate order shall issue.